Good morning. May it please the court, my name is Andy Nelson. I'm an assistant federal defender in Missoula, Montana. The issue presented on appeal today for Mr. Diaz-Hinojos is whether the government had knowledge of his presence in the United States, such that it triggered the statute of limitations and barred the incident conviction. Well, there's no dispute that the Immigration Service did not have knowledge. The question is whether potential knowledge of the IRS or other agencies might be interpreted to provide constructive knowledge. I think that's part of the question, Your Honor. The testimony in the case provided by Agent Frischman was that immigration authorities did not know that he was present. I think the issue has been framed as actual versus constructive knowledge because those are the terms that cases use. In re-reading the briefs in preparation for this hearing, I think the sides are talking past each other a little bit, and the district court sort of collapsed the analysis respectfully. But I think that's due to the nature of actual knowledge being a slippery and subjective concept, right? It seems to me that all you have to do to feed a claim of actual knowledge is say, we didn't know. And then reviewing entities such as the court most likely is looking at facts and saying, well, you knew X, you knew Y, and you knew Z, and we're going to impose knowledge on you. That's a constructive knowledge concept. As a practical reality, the immigration authorities have actual knowledge, and there's two parts to that. Not only is the person present in the United States, but that that presence is unlawful. So by the time you get to an actual knowledge kind of threshold, as a practical matter, most of the time that person is going to be in custody. They know they're in the United States illegally. They're arrested and prosecuted. So to look back at a record and say you had enough facts to know that that person was there in a legal sense, it's the legal equivalent, I think you have to resort to a constructive knowledge. That's a theory, and I would submit that's not a terribly controversial concept. Montana's a gun state. We do lots of felon and possession prosecutions there. I've taken some of those to trial, and a client says, I didn't know the gun was in the back seat. Well, the trial occurs, the proof is put on, and constructive knowledge is imposed on that person. You may say you didn't know. It's hard to prove or disprove. But we're going to prove that you should have known because it's in the back seat. Let's assume that they had, if we adopt constructive knowledge, what's the evidence that the immigration people had constructive knowledge? And that's the other part of this issue that I've raised, just that. I know, that's why I'm asking. I think the district court analyzes this in terms of actual knowledge. I would submit you can never have actual knowledge of what another agency knows until they tell you. I'll just answer my question. Let's assume that there is a constructive knowledge doctrine we've adopted for proof. My question, what's the evidence that the immigration people actually had constructive knowledge? Thank you, Your Honor. The evidence in this case that I would submit supports the knowledge. Racism is mostly known by other agencies. You have to see that. So you would ask us to adopt your rule that says that if the government, in this case Social Security and IRS, for example, know he's there because he's got a Social Security card and he's paying taxes. So even if the immigration people don't know that, they have some obligation to check with these other agencies. Is that your theory? In this case, Judge, yes. I'm hesitant to say this, of course, to adopt some sort of broad-based rule, but why in this case? In this case, I think the best facts are that he filed federal tax returns for several years, before and after removal. He was removed in 2002. The uncontroverted testimony, I know this is de novo review, but the district court found it's on the record that he returned within a day or two in October of 2002. He lives continuously at the same address in Las Vegas, Nevada, until he's encountered in Missoula, Montana, as part of a construction crew on July 4th, 2015. He paid taxes with a federal tax ID number and a Social Security number in 01, 02, 03, 08, and 13. You're telling me why these other agencies have knowledge, and you mentioned why the immigration people had knowledge. Well, the testimony in this case from Agent Fishman is that they did not, because they didn't look. So you're asking us, in this case, to say they should have checked with Social Security or the IRS. In this case. And what's the basis for that argument? It's a case of legal authority. Well, that's a constructive knowledge type of idea, Judge, certainly. It's imputed to the immigration people. Yes, in this case, that would be our contention. That's why you say, in this case, why would it be? What's the limiting principle? Well, I represent Mr. Diaz and Almos, and I'm not trying to articulate some sweeping rule. But you're asking us to adopt a rule that would help him. So would that rule be limited to tax filings or entire government's knowledge? How would you propose that we adopt a rule in this case to help your client? That's a very good question. I think the rule should first contemplate the concept that we're articulating here, which is that that knowledge can come from other agencies, that that's not really that big a hurdle. Well, constructive knowledge could even be within the same agency. It could be one agent and nobody was somewhere in the agency. So just getting you as far as constructive knowledge doesn't really tell us why we should look at the IRS, why we should expect the immigration authorities to look at tax filings. That's true. I would argue, Judge, that the scales are already in favor of the government here. The cases talk about there's so much litigation around the found and straightened of 1326 violations because it's not just the criminal act, what the defendant does, it's in part what the government does, discover that person here. So you already have a continuing offense concept in 2C, and so the government already controls sort of the commencement of the limitations period. So the rule I'm advocating for is one that recognizes all the facts in a particular record and says, in this instance, there's enough there for you, immigration authorities, through the exercise of reasonable diligence, to know that that person was present unlawfully in the United States, and we're going to start the limitations period at that point. Counsel, did the district court reach this question of what constructive knowledge rule to apply, if any? Because you have the Seventh Circuit case, which requires actual knowledge by the immigration agency. Yes. And the fact that other agencies might be aware of this person does not help. What did the district court do with respect to this issue? My interpretation of the district court's ruling here is that he said, Judge Christensen said, you can't rely on what other agencies know. It's only what this agency knows. I'm not going to go that far. So he gave you an actual knowledge test, in effect. That's what I think he did. He said, assuming you could have constructive knowledge, I'm still going to require that immigration authorities know, which is really the same thing. You can't have actual knowledge of what other agencies know. But he didn't make a ruling with respect to the application of constructive knowledge. He did not. I think he left that question open, just like the court did in Zamudio. Yes. You may want to save some time for a follow-up. Thank you, Judge. If there are no further questions, I'll do that. Thank you. Good morning, Your Honors. May it please the Court and Counsel. My name is Tim Roscoe. I'm an Assistant United States Attorney for the District of Montana, working out of the Missoula office. I'm here just briefly, I think, to address your question about Judge Christensen's assessment of the actual versus constructive. He says in the order, we'll assume for the sake of argument that constructive knowledge is enough. So I don't think he relied strictly on an actual knowledge theory. But he said we're going to require, if it is constructive knowledge, that it's constructive knowledge to the immigration authorities. And that sort of dovetails, Judge Fischer, with your questions as well. Why should we break up the United States government into pieces? And if we start breaking it up into pieces, then why do we stop at immigration authorities? Why don't we have the local immigration authorities or the local branch or something else? What's your limiting principle for how we should be dividing up the government? Well, I think to break it up and limit at least whether it's actual or constructive, to limit that to immigration authorities, the reason to break it up is for the two reasons that Judge Christensen noted in his order. And one of those is that's historically what courts have done. And the second is there's a practicality concern to say that we're going to impute knowledge, especially given the size of today's federal and state governments, we're going to impute knowledge from the IRS or Social Security to the immigration authorities. What's the problem with imputing knowledge, though? I mean, you're saying it's a practical problem. What's the practical problem? I think what we see out here, just the size even. I mean, Agent Fershman says to us at the time, we can talk to those agencies and get information, but now we can't. So even if we wanted to. Is that still true in the current administration? Well, that's the question. I don't know. What we know is what Agent Fershman testified to in this record in this hearing, which was the prior administration. I suppose the government that inflicted that rule on the immigration authorities, it wasn't as if the government couldn't have continued the policy of allowing immigration to check with the other agencies. Isn't that correct? That is correct. So why should the government be able to create a barrier to the statute of limitations by creating these compartmentalizations? Well, I think for a couple of reasons. One, I don't think it's created with the express intent of avoiding the statute of limitations. No, I don't. But that's the practical effect. Sure, in a case like this. But also because we do that in a variety of contexts. We do that in particular as it relates sort of indirectly to this case with the IRS. You know, even in criminal investigations, you're not permitted to just go and get tax information for whomever you'd like. You have to submit requests to the district court and get an ex parte order in order to access that information. You would have had to do that to find out whether this fellow was, by name, was paying taxes? I think we would. And, frankly, in a situation like this, without any basis to assume that there's a need to undertake that analysis. Normally when you're getting an ex parte in a fraud case or something, you've already reached a reasonable suspicion or a typical suspicion quantum in order to justify that further analysis here. You would really just be sort of blindly reaching in and asking for information about individuals on the assumption that they came back illegally when you deported them the first time and told them they couldn't. So it was just for privacy. Until he actually comes into the custody of DHS immigration people, there's no reason to go checking upon him with these other agencies. Is that at your point? Yes, I think that it would be. And that sort of relates again to whether it has to be actual or constructive. I think that's a pretty rigid formulation. I think that would be you have to actually wait until you actually find them. Well, I'm assuming you said that there was a duty to check with the other agencies and become a part of immigration. When would they know to exercise that? I understand you're saying, well, he may be deported coming back in while he starts paying taxes. It's a Social Security number. But your argument is, oh, the INS or the immigration people can't just decide to contact them and check to see if he's come back in and he's doing something that evidenced the presence. Well, and I guess if that sort of a duty were imparted to the agency, then I think it becomes a question of how and when do you do that? Do you start looking the day after every individual? Exactly. So, of course, that's your privacy argument.  And I think also a practicality concern. You don't have to stand here and say if things are too hard for the government, you shouldn't have to do them. That's not what we're saying. But I do think in a situation like this, that given the complexities of this issue, there's a particular sort of intersection between the practicality and the privacy. So I suppose the IRS or the Social Security people could have a record of deportation accuracy. And they could run that in their databases, and then they could inform the immigration people. And that could be another sort of layer that is sort of put upon those agencies to do that, if that's true. I guess also that gets back to the practicality. If we're talking about the whole government, you're suggesting there is a way for them and those agencies to alert the immigration people that you've got this guy, you've deported him, now we're giving him the Social Security card and he's paid taxes. Well, I think in theory there's always a way. I mean, I think that sort of goes to the point that Mr. Nelson made, which is that the case has suggested sort of a two-pronged analysis, discovery of the person's presence is one prong, but also an understanding or knowledge of the fact that the person is here illegally. Well, I'm not sure how this all cuts. It seems to me that you're suggesting government could do it. And if you didn't, then it's too bad. But you have the means to find out. So the statute should have required money to come back into the country. Well, if I intimated that, I guess here's my point is on this record, all indications are the government could not do it. I'm saying hypothetically, I suppose if the court says, here's the duties we're going to impart to the federal government, figure out, they'll have to try to figure it out. But I do think there would be significant practicality concerns, and frankly, just as importantly, privacy concerns. I don't know that we want these types of agencies charged with the sorts of tasks and responsibilities with which they are charged to be communicating with one another in that regard. I think it's a very slippery slope to go down, considering the privacy of a lot of other citizens. But how is there anything left of the statute of limitations in your view, then? Well, for instance, and you made this point earlier, Judge Friedland, if all of the information in this case were known to immigration authorities and the court was going with a constructive theory in terms of the knowledge requirement for the government, then the statute could run at whatever point in time we could determine it, which is really difficult to determine here. But if for some reason this – I'm sorry, Your Honor, yes? I'm going to interrupt. I heard it when you used the word constructive again. What's troubling me here is that I don't think your brief really went into any kind of an analysis of the circuit split that exists in this area, as my research indicates. So the Seventh and the Fourth Circuits both require actual knowledge, but the Third, Eighth, Tenth, and Eleventh require or allow constructive knowledge, and the Second and the Fifth kind of have a hybrid approach. I didn't read from your brief that the government is endorsing any one of those principles. I think that's fair, Assessor, Your Honor. If we follow what we got hung up on, the judge's assumption in his order that constructive knowledge would suffice, and so it became over who would suffice. He said assuming for the sake of argument constructive knowledge is enough, then it sort of becomes a question of to whom. So not so much how the actual or constructive, but to whom, being immigration or other government agencies and which federal, state, local, etc. So you're willing to ride on the principle that if we follow the constructive knowledge rule, out of the Third, Eighth, Tenth, and Eleventh, what are the consequences? Well, I would say I would approach it this way. I would say, first and foremost, I think that actual knowledge would be what would suffice to satisfy the standard for statute of limitations. For one reason, it's that there's no indication that anyone ever does anything to not find out in order to avoid the statute of limitations. So the whole theory of cases that underlie the statute of limitations are such that you have to do something if you want to find someone. If you're, to me, actual knowledge is you find them when you find them. That would be our starting position. But if it's constructive, it would be constructive to the immigration authorities and not just constructive to other federal or even state or local government agencies that would then be immune to immigration authorities. In other words, within the immigration agency, in effect. Yes? Gomez in the Eighth Circuit case said you have a duty, therefore, to exercise due diligence, which gets back to the question whether the immigration people could have checked with their agencies. Right, but in Gomez, the question was information they had in their own files. So the individual presented himself to immigration officials and said, here's a fake name and some other fake information, but here's my real fingerprints. Now, obviously telling them that that's the information he provided. And they said, look, that stuff was in your files. All you had to do there was look at this within your own agency and say these are the real fingerprints of this person. But I think that's a pretty different question from saying you were paying taxes. So you focused a lot in your brief on the procedures that the government had starting in 2009 that you say prohibited this kind of information sharing. But why isn't it relevant what happened before 2009? Because his statute of limitations could have run before 2009, couldn't it? Yes, I'm trying to do the math. My answer is yes. So do we need to remand in this case for a discussion or inquiry into what the pre-2009 procedures were and whether it would have been possible or expected for the agents, the immigration officials, to look for this information in the pre-2009 procedures? We don't believe so because we think that it should start with an actual knowledge theory in the first place. But if you were to say constructive knowledge is enough and also say it can be constructive knowledge that's known to other agencies, then I suppose we're that far down the road. But that's far afield from what we're saying, which is even if you adopted a constructive knowledge theory, it's still a question of constructive knowledge to whom. And we would say to the immigration authorities, wouldn't we? And that's something that could be done. I'm not sure I really got an answer, but why do you draw the line around immigration authorities? It seems like there sort of needs to be an arbitrary line somewhere. I'm not sure why we draw it exactly there. Well, because they're the individuals who are charged with prosecuting and finding and locating and prosecuting and determining legality or illegality of individuals in this country. It's not what the IRS does. It's not what Social Security does. It's not what Nevada Department of Motor Vehicles does. So I'm arguing the immigration authorities are the ones charged with handling these issues. So even if knowledge is going to be imputed to them, it should be knowledge that somehow makes its way into their files of an individual's presence in the country and the legality of it. For instance, the IRS, you could argue, has at least constructive knowledge that Mr. Diaz is here because he's paying taxes. So he's not physically standing in front of them, but he's constructively known to them. But they are in no position to know today, at least, that he's illegal. And that is sort of the two-pronged analysis that the cases seem to suggest is in play, and that goes back to Jeff Bezos' point about the normal diligence of law enforcement officers. Does this depend on how the immigration officials organize their computer systems? I mean, if there's someone who arrests him in Seattle, but his file is in D.C., I mean, what if the government starts dividing up these computer systems so it has a West Coast computer system and an East Coast computer system, then are the immigration officials two agencies? Well, I think in those facts, obviously it would be a different set of arguments. But no, I think you could conceive of a situation where you say, look, if different segments of the immigration community decide not to talk to each other, that's their problem. And why don't we just say it's the same thing about IRS and immigration? You could have one computer system. You could. I mean, I think that's a scary road to go down. Given all the other information that's contained in those databases for so many other people, given the timing questions that we've talked about with Judge Fischer, I just think. . . I think it's the government's position that that's a scary road to go down because I thought that was the government's new position about sharing between agencies. Well, this sort of line of discussion came up at the hearing. What I should say is I think that there's a lot of information contained in the files of those agencies whose primary, secondary, any. . . I mean, they have no task at all or no role at all as of today in determining the locality or illegality of people. And then to say we're going to require you to know that information is going to require you for immigration to get it for the IRS or IRS to give it to immigration. And I don't, from a policy perspective, know that that's something that's a forward one to adopt. But certainly, if you wanted to go all the way there on the constructive knowledge theory, you could. And this is a comment from one of my team. You can take over your time. If you can take over your time, we'll give you three minutes for a rebuttal. Thank you, Judge. I don't know if I need that. I'll try to be brief. I just want to pick up this thread of what the district court described as the practical realities of interagency communication. The testimony in this record was provided by Agent Frischman regarding the IRS specifically. And the essence of his testimony, which we outlined in the brief, is, you know, we used to call the IRS to get information, but we don't anymore because they won't tell us. And that's really the record here about those practicalities. Let me say what triggered the inquiry. In other words, dealing with this issue of dipping in or initiating a request. It's troublesome that unless the immigration people have reason to believe that the person's back in the country, they should be calling up the IRS to see if this guy's paying taxes. So what did he explain under what conditions they, in the past, would have made such a call to IRS? No, that's not my interpretation of the record, Your Honor. I think the answer to that question, why should the immigration authorities look, is the statute of limitations. If you're going to bring the full course of power of the federal government against one individual, a statute that's to be liberally interpreted in favor of or opposed, then you have some sort of duty. I mean. Do you understand what you're advocating, which is this guy gets deported, and now they put in their checklists, DOs, you know, and also every six months they'll check with the IRS to find out if he's started paying taxes. I think I understand what I'm advocating for. Obviously, I can't speak to every possible application of that. I think the privacy concern is overblown. I cite a language from Chief Judge Kaczynski in the brief from the comprehensive drug testing case. The government has many ways to systematically search for information. Here it would be the fact of a tax return being filed at an address. It's not the numbers that matter. Would your rule, though, encourage the government to look at tax returns and thus penalize the very people who are trying to follow the law by paying their taxes? I'm not sure how this is a good rule for defendants. Mr. Asplund, I've had that frank discussion, Your Honor. When I come back to this, in this case, my client was removed long ago, built a life here, and was not given the benefit of the statute of limitations when he was prosecuted many years later. Fashioning a particular rule, I understand, is this court's concern. I think to base a decision here on the practical realities of the inherent agency communication on this record is very difficult. Thank you, counsel. Thank you. Thank you, both sides, for the very helpful arguments in this case. The case is submitted.
judges: O'scannlain, Fisher, Friedland